439 A.2d 105

**COMMONWEALTH of Pennsylvania ex rel. Russell GIBSON, Appellant,**

v.

**Attillio DiGIACINTO, Warden of Northampton County Prison.**

Supreme Court of Pennsylvania.

Submitted Oct. 22, 1981.

Decided Dec. 23, 1981.

Margaret H. Poswistilo, Asst. Public Defender, for appellant.

Edward G. Ruyak, Bethlehem, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN, and WILKINSON, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Appellant, Russell Gibson, was involuntarily committed to Farview State Hospital [hereinafter "Farview"] pursuant to the Mental Health Procedures Act [hereinafter "Act"].[1] The Superior Court affirmed the commitment on December 14, 1978. *Com. ex rel Russell Gibson v. DiGiacinto*, 261 Pa.Super. 53, 395 A.2d 938 (1978). We granted appellant's petition for allowance of appeal.

As a result of his behavior in a youth home, appellant was committed to Easton Hospital under § 302 of the Act on

1. Act of July 9, 1976, P.L. 817, No. 143, 50 P.S. § 7101, et seq.

January 14, 1977. Although he escaped the next day, appellant was admitted to Allentown State Hospital four days later.[2] On February 3, 1977, it was determined that appellant did not require further hospitalization. Six weeks later appellant was arrested and charged with burglary, criminal mischief and criminal attempt to commit arson. The attempted arson charge was dismissed at the preliminary hearing and appellant pleaded guilty to charges of criminal mischief and criminal trespass[3] on June 29, 1977. Following the guilty plea proceeding the hearing court deferred sentencing and ordered a psychiatric evaluation as part of appellant's pre-sentence report. Appellant returned to Northampton County Prison to await sentencing.

The court-appointed psychiatrist filed a report with the Court recommending continuous treatment for appellant. On July 26, 1977, the warden of Northampton County Prison filed a petition for the involuntary commitment of appellant. A hearing was held before a mental health officer and appellant was involuntarily committed to Farview for a period not to exceed ninety days. The Court of Common Pleas of Northampton County held a hearing *de novo* and also ordered appellant's commitment.

At the hearing there was psychiatric testimony in addition to testimony describing appellant's behavior while in the county jail. A psychiatrist who examined appellant and testified for the Commonwealth described appellant as schizophrenic with paranoid delusions. He further expressed the opinion that appellant posed a clear and present danger to himself and others.

The court also heard testimony of specific instances of appellant's behavior that allegedly resulted from mental illness. First, a correction officer at Northampton County Prison testified that he discovered appellant extinguishing a

2. The order of January 14, 1977, provided for appellant's transfer to Allentown State Hospital in the event that he "eloped."

3. The burglary charge was reduced to criminal trespass by the Commonwealth.

burning newspaper in his cell.  Second, there was testimony that appellant did not take scheduled doses of thorazine, a psychoactive drug prescribed for him.  Finally, there was testimony that a routine search at the jail on July 25, 1977, revealed that appellant possessed a twisted piece of coathanger.  Appellant now argues that the evidence described above is insufficient to support the order of commitment.

Russell Gibson was committed pursuant to § 304(a) of the Act, 50 P.S. § 7304(a), which provides for a commitment of "a person who is severely mentally disabled and in need of treatment . . . upon a determination of clear and present danger . . . [of] serious bodily harm to others, . . . inability to care for himself, creating a danger of death or serious harm to himself, . . . attempting suicide, or . . . self-mutilation."  The standards for a finding of clear and present danger are set forth in § 301 of the Act, 50 P.S. § 7301, which provides that:

". . . Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. . . .

"Clear and present danger to himself shall be shown by establishing that within the past 30 days:

"(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act;  or

"(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act.  For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide;  or

"(iii) the person has substantially mutilated himself or attempted to mutilate himself substantially and that there is the reasonable probability of mutilation unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation."

■ The function of this Court is not to find facts but to determine whether there is evidence in the record to justify the hearing court's findings. However, we are not bound by the hearing court's legal conclusions and must reverse if the evidence does not justify the hearing court's decision. *Lawner v. Engelbach*, 433 Pa. 311, 249 A.2d 295 (1968). *Commonwealth v. Kerrigan*, 271 Pa.Super. 404, 413 A.2d 729 (1979).

Applying the above standard of review to the present case, it is clear that if appellant is to be found a clear and present danger to himself or others, it is necessary to show an overt act involving attempted suicide or self-mutilation or the infliction or threat of serious bodily harm to others to support the finding. In the absence of such an overt act, actions indicating inability to satisfy his own need for nourishment, personal or medical care, shelter, or self-protection and safety must be shown. § 301 of the Act, *supra; accord, In re S.C.*, 280 Pa.Super. 539, 421 A.2d 853 (1980).

■ Clearly, the involuntary commitment of appellant was improper. There is no evidence of attempted suicide or self-mutilation. The burning newspaper in appellant's cell cannot be viewed as such an attempt. Appellant was permitted to smoke and other inmates had access to his cell. There was no evidence that the newspaper was deliberately set on fire. The testimony reveals only that appellant was extinguishing a folded newspaper that was one-quarter burned when he was confronted by the correction officer.

Similarly, appellant's occasional failure to take medication did not threaten his life or well-being. There was no

evidence to show that his behavior changed as a result of missed doses of the drug. Indeed, the only testimony offered indicated that the drug had long-lasting effectiveness and missing an occasional dose would not affect appellant's behavior. Appellant's possession of the piece of coathanger allegedly fashioned into a weapon was also not a proper basis for commitment. There was no testimony that appellant used or threatened to use the hanger to injure himself or others.

Clearly none of the above instances constituted the overt act required by The Mental Health Procedures Act nor do they show such inability on the part of appellant to attend to his needs as to threaten death, serious bodily injury, or serious physical debilitation. As there was insufficient evidence that appellant posed a clear and present danger to himself or others under the Act, the hearing court erred in ordering appellant's involuntary commitment.[4]

The Order of the Superior Court is reversed and appellant is discharged from the involuntary commitment order pursuant to The Mental Health Procedures Act, and remanded for sentencing.

---

4. In view of our determination we need not discuss appellant's allegation that hearsay evidence was improperly admitted at his commitment hearing.