J. S40012/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN RE:  L.K.                             :        IN THE SUPERIOR COURT OF
                                         :            PENNSYLVANIA
APPEAL OF:  L.K.,                        :
                                         :        No. 1256 WDA 2014
                    Appellant            :

Appeal from the Order, July 2, 2014,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. 1032 of 2014

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 10, 2015**

Appellant, L.K., [1] brings this appeal from the order of the trial court

that denied her petition for review of a commitment order entered pursuant

to Section 303 of the Mental Health Procedures Act ("MHPA"),[2] 50 P.S.

§ 7303, extending her confinement to a mental health facility for an

additional 20 days.  We affirm.

The facts underlying appellant's involuntary commitment have been

summarized as follows:

> While on a mobile crisis call, the patient became
> agitated, screaming threats to kill my partner.  She
> was delusional, stating that a WPIC Doctor was her
> brother, and that she saw him rape and kill people.

---

* Retired Senior Judge assigned to the Superior Court.

[1] Mindful of the sensitive nature of the case, we have amended the case
caption to utilize only the initials of appellant.

[2] 50 P.S. §§ 7101-7503.

> The patient was so angry, she walked across a busy street, into traffic, without being aware. She refused mental health treatment at that current time. She is fixated on people thinking she is "crazy" and doctors wanting her to take medication.

Section 302 application, 6/27/14 at 3[3] (Docket #11).

Based on the above, appellant was involuntarily committed for treatment at Western Psychiatric Institute and Clinic ("WPIC"), pursuant to 50 P.S. § 7302, upon a Section 302 petition of Michael Beczak and Joe Mussori and the examination of Dr. Robert Frank. On June 30, 2014, following a hearing before a Mental Health Review Officer, appellant was committed to extended inpatient care at McKeesport Hospital for a period not to exceed 20 days pursuant to Section 303. That same day, appellant submitted a petition for review of certification with the trial court. A hearing was held on July 2, 2014, and a final order was entered that upheld the certification.

Appellant filed a timely notice of appeal on August 1, 2014. On August 13, 2014, appellant was ordered to file a Pa.R.A.P. 1925(b) statement within 21 days after the entry of the order. On September 3,

---

[3] We note in appellant's brief, under Factual History, she describes the events leading up to the filing of the Section 302 petition and cites to the audio recording of the June 24, 2014 hearing. The hearing audio is not in the certified record nor is there a transcript of that hearing in the record. What does not appear in the certified record does not exist. *Commonwealth v. Preston*, 904 A.2d 1, 6-7 (Pa.Super. 2006) (Superior Court may not consider documents not in the certified record). It is appellant's responsibility to ensure that the record is complete. *Id.*; *Commonwealth v. Hallock*, 722 A.2d 180, 182 (Pa.Super. 1998).

2014, the 21st day, appellant filed a petition for extension of time to file Rule 1925(b) statement. (Docket #3.) On September 16, 2014, appellant filed an identical petition for extension of time to file her Rule 1925(b) statement that included a blank order. (Docket #4.) On October 7, 2014, appellant filed her Rule 1925(b) statement.[4] The trial court issued its

---

[4] Our review failed to uncover an order granting appellant's petition for extension of time in the certified record, nor is there a notation on the docket sheet that an order was entered. On its face, appellant's Rule 1925(b) statement appears untimely filed. However, the trial court's January 15, 2015 opinion notes that "[appellant] timely filed her 1925(b) statement." (Trial court opinion, 1/23/15 at 1.) Appellant's Rule 1925(b) statement states: "Your Honor ordered the Concise Statement of Matters Complained of on Appeal to be filed by October 8, 2014." (Docket # 5, at 2.) As stated above, the Rule 1925(b) statement was filed on October 7th.

The Pennsylvania Supreme Court has extended the right to effective representation by counsel in only one non-criminal context, civil commitment proceedings involving an alleged mental incompetent, consistent with the protections required when the state seeks to deprive an individual of her physical liberty. *In re Hutchinson*, 454 A.2d 1008 (Pa. 1982). In *Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa.Super. 2009) (*en banc*), we held the untimely filing of the Rule 1925(b) concise statement is the equivalent of a complete failure to file. Both are *per se* ineffectiveness of counsel from which appellants are entitled to relief. *Id.* Furthermore, we held that when counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues, we need not remand and may address the merits of the issues presented. *Id.* Because counsel has filed appellant's Rule 1925(b) statement and the issue raised was addressed by the trial court, there is no need to remand for the filing of a new Rule 1925(b) statement.

Rule 1925(a) opinion on January 23, 2015. On appeal, appellant challenges the sufficiency of the evidence presented to support her commitment.[5]

This court reviews determinations pursuant to the MHPA to "determine whether there is evidence in the record to justify the hearing court's findings." *In re T.T.*, 875 A.2d 1123, 1126 (Pa.Super. 2005), citing *Commonweath ex rel. Gibson v. DiGiacinto*, 439 A.2d 105, 107 (Pa. 1981). Although "we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." *Id.* citing *Gibson*, 439 A.2d at 107.

Instantly, appellant argues the evidence presented at her certification hearing did not establish that she was a clear and present danger to herself or others. Appellant contends she was committed based on exceptionally mild conduct which evidenced nothing but understandable distress in the wake of being evicted from her apartment. She maintains she was neither "homicidal" nor "suicidal," and she displayed "no physical symptoms of any illness" at the time of her hearing. (Appellant's brief at 10.)

> The legislature's purpose in enacting the Mental Health Procedures Act was "to assure the availability of adequate treatment to persons who are mentally ill" and "to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally

---

[5] Although appellant's period of commitment has expired, this appeal is not moot because involuntary commitment affects an important liberty interest, and because by their nature involuntary commitment orders expire before appellate review is possible. *See In re Woodside*, 699 A.2d 1293, 1296 (Pa.Super. 1997).

ill person or to others." Mental Health Procedures Act, § 102. ***See also In re McMullins***, 315 Pa.Super. 531, 462 A.2d 718, 722 (1983). To achieve these objectives within the constraints of due process "the scheme adopted by the legislature here envisions that more extensive procedural or 'due process' protections will apply as the amount of time a person may be deprived of liberty increases above a bare minimum." ***Matter of Seegrist***, 517 Pa. 568, 574, 539 A.2d 799, 802 (1988). The resulting progression in sections 302, 303, and 304, evinces the legislature's clear concern that the procedural protections afforded our citizens reflect the extent of the deprivation of liberty at stake. ***In re Hancock***, 719 A.2d 1053, 1057 (Pa.Super.1998).

Section 302, which provides for involuntary emergency examination and treatment, allows confinement of the patient for up to 120 hours upon certification by a physician, or authorization by the county mental health administrator. Mental Health Procedures Act, § 302(a), (d). Though action by the administrator requires issuance of a warrant, "[i]n light of the emergency nature, therapeutic purpose and short duration" of a section 302 commitment, the warrant need not be supported by probable cause and may be based upon hearsay. ***In re J.M.***, 556 Pa. [63,] 75-76 n. 9, 726 A.2d [1041,] 1046-47 n. 9 [(1999)].

Section 303 provides for extended involuntary emergency treatment whenever, following a patient's commitment under section 302, "the facility [where the individual is currently under treatment] determines that the need for emergency treatment is likely to extend beyond 120 hours." Mental Health Procedures Act § 303(a). To ensure that the individual's liberty interest is protected, section 303 subjects the facility's determination to substantial legal scrutiny. Application for continued treatment must be made to the court of common pleas and shall state the grounds on which treatment is to be imposed along with the name of any examining

physician and the substance of his opinion regarding the mental condition of the patient. *Id.* at § 303(a). Because a patient may be confined under section 303 for as long as twenty days, the legislature has mandated a right to counsel, and the right to an informal hearing, at which counsel may question the examining physician and other witnesses. *Id.* at § 303(b), (c). Though the rules of evidence need not be applied, the reviewing judge or mental health review officer (MHRO) must confine his consideration to evidence he deems reliable. *Id.* at § 303(c). Moreover, we have held that a patient may not be confined under section 303 on a showing of less than "clear and convincing evidence." *In re Hancock*, *supra* at 1058.

*In re R.D.*, 739 A.2d 548, 555-556 (Pa.Super. 1999), *appeal denied*, 751 A.2d 192 (Pa. 2000).

Instantly, appellant's commitment was extended under Section 303 after an informal commitment hearing. To prove the necessity for emergency involuntary commitment under Section 303, the petitioner must demonstrate by clear and convincing evidence that the person being committed is severely mentally disabled and in need of extended involuntary treatment. *In re S.B.*, 777 A.2d 454 (Pa.Super. 2000).

The MHPA defines a person who is severely mentally disabled in pertinent part as follows:

**§ 7301. Persons who may be subject to involuntary emergency examination and treatment**

**(a) Persons Subject.--**Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and

treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

**(b)** **Determination of Clear and Present Danger**

. . . .

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof

> that the person has made
> threats to commit suicide
> and has committed acts
> which are in furtherance of
> the threat to commit suicide;
>
> (iii) the person has substantially
> mutilated himself or
> attempted to mutilate
> himself substantially and that
> there is the reasonable
> probability of mutilation
> unless adequate treatment is
> afforded under this act. For
> the purposes of this
> subsection, a clear and
> present danger shall be
> established by proof that the
> person has made threats to
> commit mutilation and has
> committed acts which are in
> furtherance of the threat to
> commit mutilation.

50 P.S. § 7301.

In this matter, it was determined that appellant presented a clear and present danger to herself under Section 7301(b)(2)(i). The trial court explained:

> In her 1925(b) statement, [appellant] claims that commitment was improper because no facts indicate that she "attempted to harm herself or anyone else," and that "[t]here was no fighting alleged, [and] no hitting of anyone." These assertions are of little to no significance, as [appellant] was submitted for involuntary treatment in accordance with the mandates of Section 7301(b)(2)(i), as is evinced by the original application seeking commitment under 50 P.S. 7302. The application clearly indicates that treatment was sought for [appellant] on the basis that she was a

> danger to herself as a result of delusions and a lack of awareness for her environment, because of which she proceeded to walk into traffic without looking; nothing suggested that she actually threatened or attempted violence against another person.

Trial court opinion, 1/23/15 at 2.

In the case of *In re S.B.*, this court held that a mentally disabled individual who presents a clear and present danger to herself may be involuntarily committed under Section 7303 of the MHPA without proof of an overt act, where the individual:

> has acted [within the past 30 days] in a manner which suggests that [she] would be unable to satisfy [her] need for nourishment, personal or medical care, **self-protection and safety** without the assistance of others, such that there is a reasonable probability that death, serious bodily injury, or serious physical debilitation would occur.

*Id.* at 459 (emphasis added). Here, the trial court believed appellant was a danger to herself.

Based on our review of the record, we conclude the trial court properly certified appellant's continued involuntary treatment under Section 7303 based on her need for self-protection and safety. *See* 50 P.S. § 7301(b)(2)(i). Accordingly, we affirm.

Order affirmed.

J. S40012/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2015