J-A21016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KWABENA SINCLAIR | : | No. 61 EDA 2021 |

Appeal from the Order Entered November 19, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001771-2017

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:              **FILED NOVEMBER 19, 2021**

The Commonwealth appeals from the order[1] dismissing the charges of

aggravated assault, simple assault, possessing an instrument of crime, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In its December 17, 2020 notice of appeal, the Commonwealth stated that it was appealing an order entered on November 19, 2019. On March 4, 2021, this Court issued a rule to show cause why the appeal should not be dismissed as being from an order that was not entered on the docket. The Commonwealth filed a response on March 5, 2021, and it explained that the order was in fact entered November 19, 2020, rather than November 19, 2019, and that a typographical error had occurred. As the docket reflects that the order the Commonwealth challenged was entered on November 19, 2020, and because the Commonwealth filed a timely appeal on December 17, 2020, we are satisfied that the date on the notice of appeal was merely a typographical error, and we decline to quash the appeal. **See e.g.**, **Commonwealth v. Brown**, 399 A.2d 699, 699 n.1 (Pa. Super. 1979) (declining to quash an appeal due to a typographical error), _rev'd on other grounds_ 438 A.2d 592 (Pa. 1981). We have corrected the caption accordingly.

recklessly endangering another person[2] that were filed against Kwabena Sinclair (Appellee). The Commonwealth contends that the Mental Health Court (MHC) erred in applying the extreme measure of dismissing the charges and failed to hold a competency hearing. In addition, the Commonwealth argues that the MHC did not have jurisdiction to dismiss the case pursuant to 50 P.S. § 7102 of the Mental Health Procedures Act (MHPA).[3] Appellee argues that the Commonwealth's appellate issues are waived because they were not raised before the MHC. We vacate and remand with instructions.

The MHC summarized the relevant facts and procedural history of this matter as follows:

> The instant matter stems from a January 31, 2017, incident where [Appellee] was arrested and accused of shooting his 71-year-old mother, Constance Rivers, multiple times in the arm and chest with a pellet gun causing injuries that required medical treatment. On June 27, 2017, [Appellee] was found incompetent and committed for thirty (30) days to prison health services wing. [Appellee] was accepted into Mental Health Court and on August 3, 2017, [Appellee] was found not competent to proceed and committed to Norristown State Hospital for another sixty (60) days which began his long stint with the Mental Health Court program.
>
> On June 28, 2018, the Honorable Sheila Woods-Skipper, vacated [Appellee's] Norristown State Hospital commitment, and [Appellee] was recommitted as not competent under [50 P.S. § 7305 (section 305) of the MHPA] to placement for up to 180 days. [Appellee's] bail modification motion was granted and changed from monetary bail to Sign Own Bond in the amount of $35,000. [Appellee] was paroled on July 5, 2018, and transported to

---

[2] 18 Pa.C.S. §§ 2702(a), 2701(a), 907(a), and 2705, respectively.

[3] 50 P.S. §§ 7101-7503.

Southwest Nu Stop Housing of Change, located at 4807 Germantown Avenue, Philadelphia, PA.

[Appellee] remained in compliance with the conditions of the program, however, following the death of his mother, from cancer not related to the incident, [Appellee's] compliance deteriorated. At the March 21, 2019, status listing, [Appellee] arrived late and revealed that his mother had passed away. On April 4, 2019, [Appellee] was found to not be medication compliant and experiencing behavioral problems at his placement. On May 9, 2019, [Appellee] was found not compliant, bail was reinstated at $35,000 monetary and [Appellee] was taken into custody.

On August 13, 2019, [Appellee] was found competent but in need of treatment and was committed to the Detention Center Forensic Unit for thirty (30) days. On September 10, 2019, [Appellee] was found not competent to proceed by agreement and committed for sixty (60) days to the Detention Center Forensic Unit, pending additional placement. On January 14, 2020, having secured new placement, [Appellee's] bail was modified to Sign Own Bond in the amount of $35,000, and he was transported to Guadenzia New Outlooks in Philadelphia, PA, when bed space became available. On February 11, 2020, [Appellee] was found to be in compliance with the Mental Health Court treatment plan.

On June 18, 2020, the [Appellee] was once again found in compliance with the treatment plan and was given permission to move in with his girlfriend to begin to live independently while maintaining compliance with Mental Health Court treatment plan. On July 23, 2020, [Appellee] was still living independently at a new address because of bug and rodent infestations in the previous two residences but still compliant and in contact with his case manager. At the October 10, 2020 hearing it was reported that [Appellee] had no new arrests and was engaged in mental health treatment but was not receiving case management and it was not apparent where [Appellee] was currently residing.

At the November 19, 2020 hearing defense counsel reported that [Appellee's] location was unknown and they were unable to get in contact with [Appellee]. [Appellee] had not been receiving case management, and it was reported by [Appellee's] peer specialist that contact with [Appellee] has been sporadic, he was not focused and most likely not medication compliant. It was also reported by the Commonwealth that [Appellee] has had no new arrests.

[Appellee] had moved from his previously known address, and his peer specialist did not know his current whereabouts.

This court weighed the option of issuing a bench warrant for [Appellee] but reconsidered following a discussion with defense counsel and the Commonwealth. The complaining witness, the [Appellee's] mother, had passed away from cancer not related to the incident, and the other eyewitness, the decedent's brother and [Appellee's] uncle, was last in contact with the Commonwealth in November of 2019. Since, the court had released [Appellee] to independent living, he had incurred no new arrests. There was no record of a current address for [Appellee] so he did not have service for the hearing. The culmination of these circumstances prompted defense counsel to move for a discharge stating that she saw no reason to really continue to follow this case anymore.

Based on the circumstances, this court discharged the case against [Appellee on November 19, 2020, and] the Commonwealth objected.

On November 24, 2020, the Commonwealth filed a Motion to Reconsider, which this court denied on December 17, 2020.

MHC Op., 2/16/21, at 1-3 (record citations and quotation marks omitted, and some formatting altered). On December 17, 2020, the Commonwealth filed a timely notice of appeal. Both the MHC and the Commonwealth complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth raises the following issue:

Did the [MHC] err by dismissing charges of aggravated and simple assault, possessing an instrument of crime, and recklessly endangering another person at a status listing concerning [Appellee's] mental health treatment?

Commonwealth's Brief at 4.

We first address Appellee's claim that the Commonwealth waived its issue on appeal by failing to raise it before the MHC or in its Rule 1925(b)

statement. Appellee's Brief at 14-16. Appellee argues that the Commonwealth's Rule 1925(b) statement was misleading and prevented the MHC from addressing the correct issue in its Rule 1925(a) opinion. *Id.* at 15-16. We disagree.

As noted above, when the MHC dismissed the charges, the Commonwealth objected, and it subsequently filed a motion for reconsideration. It is undisputed that Appellee was repeatedly determined to be incompetent to stand trial. Under the MHPA, dismissal of criminal charges against an individual who was determined to be incompetent implicates 50 P.S. § 7403(e). *See* 50 P.S. §§ 7401-7407 (Determinations Affecting those Charged with Crime or Under Sentence). In the motion for reconsideration, the Commonwealth asserted that the MHC erred in dismissing the charges, and it recited the facts underlying the charges against Appellee, his dangerous conduct, and his continued need for mental health treatment. Mot. for Reconsideration, 11/24/20, at 1-4. We find that the issue the Commonwealth presents on appeal and the application of Section 7403(e) were raised in the trial court.

Additionally, in its Rule 1925(b) statement, the Commonwealth raised the following issue, which is nearly identical to the issue raised in its appellate brief: "Did the [MHC] err by dismissing, *sua sponte*, charges of aggravated and simple assault, possessing an instrument of crime, and recklessly endangering another person at a status listing concerning [Appellee's] mental health treatment?" Commonwealth's Rule 1925(b) Statement, 1/19/21. It is

apparent from the record and the circumstances of this case that the MHC's dismissal of the charges implicated Section 7403(e), because it is the section of the MHPA that provides for determinations of incompetency to proceed, stays of proceedings, and dismissal. *See* 50 P.S. § 7403(e). It is undisputed that the MHC found Appellee to be incompetent at prior hearings. However, the Commonwealth argues that the MHC did not determine Appellee's competency pursuant to Section 7403(e) prior to dismissing the charges. The MHC framed the issue as Appellee requesting discharge because the complainant was deceased, the Commonwealth had not had contact with the other eyewitness for more than a year, Appellee had not incurred any new arrests after his release to independent living and that Appellee's current whereabouts are unknown. MHC Op., 4-5. Nevertheless, the factors the trial court discussed involved the application of Section 7403(e). Accordingly, we decline to find waiver.

The Commonwealth asserts that the MHC previously found Appellee incompetent, and the MHC did not make a competency determination pursuant to Section 7403(e) prior to dismissing the charges against Appellee. *Id.* at 11. Additionally, the Commonwealth contends that despite the MHC's opinion to the contrary, the time between Appellee's criminal acts and the order dismissing the charges was not long enough that it caused prejudice. *Id.* Finally, the Commonwealth argues that the MHC's order endangered Appellee's family and prevented Appellee from obtaining mental health treatment. *Id.*

Our review of an order dismissing charges following a competency determination is limited to determining whether the findings of the trial court are supported by the record and whether the trial court's inferences and legal conclusions based on those findings are correct. ***Commonwealth v. Kerrigan***, 413 A.2d 729, 731-32 (Pa. Super. 1979). However, as will be discussed below, the trial court made no determination of competency in the case at bar.

Section 7403(e) provides as follows:

> When the court, on its own motion or upon the application of the attorney for the Commonwealth or counsel for the defendant, determines that such person has regained his competence to proceed, the proceedings shall be resumed. If the court is of the opinion that by reason of the passage of time and its effect upon the criminal proceedings it would be unjust to resume the prosecution, the court may dismiss the charge and order the person discharged.

50 P.S. § 7403(e).

As noted, it is undisputed that Appellee was previously determined to be incompetent to stand trial, accepted into the MHC, and had a treatment plan. This Court has held: "[d]ismissal of the charges is only appropriate when a defendant is found incompetent and then regains competency but too much time has lapsed in the interim making it unjust to continue the prosecution." ***Commonwealth v. Hazur***, 539 A.2d 451, 454 (Pa. Super. 1988). Furthermore:

> We are not directed to, nor have we been able to find, either statutory or case law which provides for the dismissal of charges where the accused is incompetent and expected to remain so

- 7 -

forever, as appears to be the case here. While we concede the pointlessness of reversing the trial court and reinstating charges for which appellee will most likely never stand trial, we are constrained to do so, absent any statutory authority for dismissal.

*Commonwealth v. McGargle*, 549 A.2d 198, 199 (Pa. Super. 1988).

Recently, in *Commonwealth v. Humphrey*, 582 MDA 2020, 2021 WL 1616879 (Pa. Super. filed Apr. 26, 2021) (unpublished mem.),[4] our Court addressed *McGargle*, *Hazur*, and the application and interpretation of Section 7403(e). In *Humphrey*, we concluded that "under § 7403(e) as construed in *McGargle* and *Hazur*, the trial court lacked statutory authority to dismiss the charges against [the defendant] because it found that [the defendant] remains incompetent." *Humphrey*, 2021 WL 1616879 at *3. Therefore, a trial court may not dismiss criminal charges against a defendant unless and until it first makes a determination of competency.[5] *Hazur*, 539 A.2d at 454; *McGargle*, 549 A.2d at 199. If the trial court determines that the defendant remains incompetent, it is precluded from dismissing the charges. *McGargle*, 549 A.2d at 199. If, however, the trial court determines that the defendant has regained competency, it may then consider whether

---

[4] *See* Pa.R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[5] As this Court noted in *Humphrey* and *McGargle*, we are cognizant of the potential "pointlessness of reversing the trial court and reinstating charges" for which Appellee may never stand trial. *Humphrey*, 2021 WL 1616879, at *2 (quoting *McGargle*, 549 A.2d at 199). However, "we are constrained to do so, absent any statutory authority for dismissal." *Id.* (quoting *McGargle*, 549 A.2d at 199).

to proceed to trial or dismiss the charges pursuant to Section 7403(e). **Hazur**, 539 A.2d at 454.

In the instant case, we conclude that MHC's order dismissing the charges was premature because the MHC never determined whether Appellee was competent or incompetent.[6] **See Hazur**, 539 A.2d at 454; **see also McGargle**, 549 A.2d at 199. Accordingly, we are constrained to vacate the MHC order and remand this matter with instructions for the MHC to hold a hearing to determine Appellee's competency consistent with Section 7403(e) including the appropriate factual and legal findings. **See McGargle**, 549 A.2d at 199. Should the MHC determine to adjudicate the underlying criminal charges in Appellee's case after the competency determination, the parties may raise their relevant arguments including jurisdictional challenges which are premature at this juncture.[7]

_____

[6] Because we conclude that the MHC's order was premature due to the absence of a competency determination, we do not reach the Commonwealth's subsequent assertion concerning whether the MHC, a problem solving court pursuant to 42 Pa.C.S. § 916 (enabling the courts of common pleas to create problem solving courts including mental health courts), had the jurisdiction or authority to dismiss the underlying criminal charges in the case. **See** Commonwealth's Brief at 14-17. As stated above, the MHC must first make a competency determination before it may dismiss charges pursuant to Section 7403(e). We note, however, that our research has uncovered limited legal authority addressing the question of whether the MHC, as a court of common pleas problem solving court, has the jurisdiction to adjudicate the underlying criminal charges even after making its competency determination.

[7] On August 25, 2020, the Pennsylvania Supreme Court granted allowance of appeal from our Court's decision involving a problem solving court. **See**
*(Footnote Continued Next Page)*

Order vacated.   Case remanded for further proceedings.   Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2021

_____

***Commonwealth v. McCabe***, 230 A.3d 1199 (Pa. Super. 2020), *appeal granted*, 238 A.3d 330 (Pa. 2020).  The issues on appeal are as follows:

> 1) Is the pretrial disposition program Veterans Treatment Court controlled by Chapter 3 of the Rules of Criminal Procedure?
>
> (2) Was [Petitioner] impermissibly denied full benefits of the Veterans Treatment Court program, **namely a dismissal of charges**, based upon his inability to pay full restitution, in violation of his Fourteenth Amendment right to Due Process and Equal Protection under the United States Constitution?

***McCabe***, 238 A.3d at 330 (emphasis added).  The second issue from ***McCabe*** involves, among other things, dismissal of charges by a problem solving court. ***Id.***  We respectfully suggest that the problem solving court's jurisdiction and authority to adjudicate or dismiss charges may be clarified by the Pennsylvania Supreme Court on review.