J-S47008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| JQUAN HUMPHREY | | |
| Appellee | | No. 582 MDA 2020 |

Appeal from the Order Entered February 21, 2020
In the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0002008-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| JQUAN HUMPHREY | | |
| Appellee | | No. 583 MDA 2020 |

Appeal from the Order Entered February 21, 2020
In the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0000260-2018

BEFORE:  STABILE, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED: JANUARY 3, 2023**

Presently before us on remand from our Supreme Court are the Commonwealth's appeals from orders dismissing criminal charges against

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellee, Jquan Humphrey, under § 7403 of the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7403. Upon review, we vacate and remand.

The Commonwealth charged Appellant with two counts of aggravated harassment by a prisoner, 18 Pa.C.S.A. § 2703.1,[1] based on Appellant's alleged misconduct while he was an inmate at State Correctional Institute Benner Township ("SCI Benner"). One charge arose from Appellant's allegedly throwing a bag of urine on a corrections officer; the other from Appellant's allegedly spitting on a corrections officer. On September 21, 2018, the trial court ordered Humphrey to undergo a psychiatric evaluation. Dr. Scott J. Scotilla conducted the evaluation on November 7, 2018, and recommended further evaluation of Humphrey at the Forensic Psychiatric Center at Torrance State Hospital ("Torrance").

---

[1] Section 2703.1 provides:

> A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth commits a felony of the third degree if he, while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed, intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material.

18 Pa.C.S.A. § 2703.1. This offense carries a maximum penalty of 7 years of incarceration. 18 Pa.C.S.A. § 1103(3).

On March 21, 2019, Humphrey filed a petition alleging that he was not competent to stand trial. On May 16, 2019, by agreement of the parties, the trial court entered an order finding Humphrey not competent to stand trial, and directing him to undergo involuntary treatment through the Pennsylvania Department of Corrections ("DOC") for a maximum of 60 days. In orders dated July 8, 2019, and October 25, 2019, in response to requests from prison authorities and the DOC, the trial court attempted to clarify the nature of the required treatment. The October 25, 2019 order discharged Appellant from state prison and committed him to Torrance for up to 60 days pending a psychiatric evaluation. But Torrance denied admission to Humphrey because it did not accept patients serving a term of state incarceration.

On December 5, 2019, Humphrey filed motions for dismissal of the pending charges, arguing that dismissal was appropriate because two years had passed since the alleged offenses; that Humphrey was not competent to stand trial; and that the Commonwealth was unable to provide any competency restoration services. Humphrey claimed he was unlikely to regain competency and that eventual resumption of prosecution would be unjust.

The trial court conducted a hearing on February 7, 2020. Three weeks later it entered the order on appeal, dismissing the two charges of aggravated harassment under § 7403:

> **(a) Competency Determination and Burden of Proof.--**Except for an incompetency examination ordered by the court on its own motion as provided for in section 402(d), the individual making an application to the court for an order directing an

- 3 -

incompetency examination shall have the burden of establishing incompetency to proceed by a preponderance of the evidence. The determination shall be made by the court.

**(b) Effect as Stay--Exception.**--A determination of incompetency to proceed shall effect a stay of the prosecution for so long as such incapacity persists, excepting that any legal objections suitable for determination prior to trial and without the personal participation of the person charged may be raised and decided in the interim.

**(c) Defendant's Right to Counsel; Reexamination.**--A person who is determined to be incompetent to proceed shall have a continuing right to counsel so long as the criminal charges are pending.  Following such determination, the person charged shall be reexamined not less than every 90 days by a psychiatrist appointed by the court and a report of reexamination shall be submitted to the court and to counsel.

**(d) Effect on Criminal Detention.**--Whenever a person who has been charged with a crime has been determined to be incompetent to proceed, he shall not for that reason alone be denied pretrial release.  Nor shall he in any event be detained on the criminal charge longer than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.  If the court determines there is no such probability, it shall discharge the person.  Otherwise, he may continue to be criminally detained so long as such probability exists but in no event longer than the period of time specified in subsection (f).

**(e) Resumption of Proceedings or Dismissal.**--When the court, on its own motion or upon the application of the attorney for the Commonwealth or counsel for the defendant, determines that such person has regained his competence to proceed, the proceedings shall be resumed.  If the court is of the opinion that by reason of the passage of time and its effect upon the criminal proceedings it would be unjust to resume the prosecution, the court may dismiss the charge and order the person discharged.

**(f) Stay of Proceedings.**--In no instance, except in cases of first and second degree murder, shall the proceedings be stayed for a period in excess of the maximum sentence of confinement that may be imposed for the crime or crimes charged or ten years,

whichever is less. In cases of a charge of first or second degree murder, there shall be no limit on the period during which proceedings may be stayed.

50 P.S. § 7403(a)-(f), 1976 Pa. Laws. 817.

Of particular importance prior to the Supreme Court's remand was subsection (e), whose first sentence provides for resumption of prosecution after the defendant regains competence and whose second sentence provides for dismissal of charges where resumption of prosecution would be unjust because of the passage of time. 50 P.S. § 7403(e). The statute does not make expressly clear whether the defendant's resumption of competence, described in the first sentence of § 7403(e), is a prerequisite to the dismissal of charges as described in the second sentence. The trial court found that it was not. The trial court explained that the aggravated harassment charges were already two years old as of its opinion and order, and that Humphrey would be ineligible for competency restoration services at Torrance for at least another two and one-half years, that being the remainder of the state sentence he was serving. Thus, the court reasoned, the pending charges would be nearly five years old before Humphrey could begin competency restoration treatment. "Given the severity of [Humphrey's] incompetency, the court finds it highly unlikely that [Humphrey] would be able to recall the events for which he is charged, and certainly would be prejudiced in defending himself at trial due [sic] as a result." Trial Court Opinion, 2/19/20, at 4. For those reasons, the trial court dismissed the charges. *Id.*

This panel reversed, relying on **Commonwealth v. McGargle**, 549 A.2d 198 (Pa. Super. 1988), **abrogated by Commonwealth v. Humphrey**, 283 A.3d 275 (Pa. 2022). In **McGargle**, as here, the Court considered an order dismissing criminal charges against a defendant who was deemed incompetent to stand trial and unlikely to regain competence in the foreseeable future. **Id.** at 199. The **McGargle** Court held that § 7403 did not authorize dismissal of charges where the defendant remained incompetent:

> We are not directed to, nor have we been able to find, either statutory or case law which provides for the dismissal of charges where the accused is incompetent and expected to remain so forever, as appears to be the case here. While we concede the pointlessness of reversing the trial court and reinstating charges for which appellee will most likely never stand trial, we are constrained to do so, absent any statutory authority for dismissal.

**Id.** at 199. In summary, the **McGargle** Court concluded that § 7403 did not provide statutory authority for dismissal of pending charges prior to a defendant's regaining competence.

Our Supreme Court granted Humphrey's petition for allowance of appeal and issued an opinion abrogating **McGargle** and reversing this panel's order. In a divided opinion, our Supreme Court construed § 7403 to permit dismissal of charges against a defendant who is incompetent to stand trial and will remain so for the foreseeable future:

> As [Humphrey] cogently argues, under the Commonwealth's construction of Section 7403(e), the trial court lacks the authority to dismiss criminal charges filed against an incompetent defendant under any circumstances, regardless of the duration of the stay of the criminal proceedings, the likelihood of the defendant regaining competence, the lack of treatment

options available to restore competency, and the prejudice suffered by the defendant due to the passage of time and its effect on the criminal proceedings.

***Humphrey***, 283 A.3d at 292. Further,

> [T]he Commonwealth's interpretation does not give effect to all provisions of Section 7403, particularly subsection (f)[….] As Appellant persuasively argues, subsection (f) sets forth a mandatory limit on the duration of stays of criminal prosecutions of incompetent defendants in cases involving charges other than first and second degree murder, thereby implicitly acknowledging that a trial court must dismiss charges when that maximum period has expired. Subsection (f), however, does not provide authority to dismiss the criminal charges. The exclusive authority to dismiss charges appears in subsection (e). If we construe subsection (e) as conditioning dismissal on the defendant's regaining of competency, trial courts would lack statutory authority to dismiss charges in cases where the maximum period for the stay under subsection (f) has lapsed and the defendant remains incompetent. This interpretation of subsection (e) would effectively render subsection (f) inoperable.

***Id.*** at 292–93. For these reasons, the ***Humphrey*** Court rejected the Commonwealth's argument that § 7403 provides no statutory authority for dismissal of pending charges against a defendant who remains incompetent.

Our Supreme Court remanded to us for consideration of the Commonwealth's two remaining assertions of error:

> Whether the Centre County Court of Common Pleas below erred when it dismissed the charges in the instant matter against [Humphrey] pursuant to 50 P.S. § 7403, where the evidence on record was insufficient to support the court's assumption and conclusion that [Humphrey] would be prejudiced if he were restored to competency and made to stand trial at a future date?

> Whether the Centre County Court of Common Pleas below erred when it dismissed the charges in the instant matter against the Humphrey pursuant to 50 P.S. § 7403, rather than ordering a

- 7 -

competency evaluation of [Humphrey] by the Department of Human Services?

Commonwealth's Brief at 5.[2]

We are cognizant that the record in support of the orders on appeal is cold, the hearing having occurred on February 7, 2020. And we are cognizant of the Commonwealth's argument that the trial court failed, prior to dismissing the charges, to comply with the requirement of § 7403(c) that a person declared incompetent be reexamined for competency at least every 90 days. The Supreme Court majority noted the potential need for a remand on this point:

> We observe additionally that notwithstanding the Commonwealth's request to have Appellant reevaluated pursuant to Section 7403(c) […] the trial court refrained from doing so. If it deems it necessary, the Superior Court may remand the matter to the trial court for compliance with that provision.

*Humphrey*, 283 A.3d at 295 n. 22. Nonetheless, if we conclude that sufficient evidence supported the orders on appeal, then this matter is at a close. We therefore begin with that issue.

The statute, as noted above, provides, "[i]f the court is of the opinion that by reason of the passage of time and its effect upon the criminal proceedings it would be unjust to resume the prosecution, the court may dismiss the charge and order the person discharged." 50 P.S. § 7304(e). We review the order dismissing charges to determine "whether the findings of the

---

[2] We have relied on the parties' original briefs filed prior to remand.

trial judge are supported by the record and whether the inferences and legal conclusions based thereon are correct." ***Commonwealth v. Kerrigan***, 413 A.2d 729, 731-32 (Pa. Super. 1979). In ***Kerrigan***, the defendant "failed to offer any evidence that it would be 'unjust' to resume prosecution in the event that he once again became incompetent." ***Id.*** at 732. Thus, we affirmed the order denying his motion to dismiss. ***Id.*** at 732.

Here, Humphrey presented no evidence at the February 7, 2020 hearing. The Commonwealth produced three witnesses to discuss the treatment options available to a state inmate who is declared incompetent to face pending criminal charges. Jessica Penn Shires works in the Pennsylvania Department of Human Services ("DHS"), Office of Mental Health and Substance Abuse Services ("OMHSAS"). N.T. Hearing, 2/7/20, at 4. She testified that an inmate who is not competent to stand trial must await parole or the expiration of their maximum sentence before beginning competency restoration services at Torrance or Norristown State Hospital. ***Id.*** at 5-6. But OMHSAS can do periodic competency evaluations for state inmates. ***Id.*** at 6-7. The Department of Corrections ("DOC") offers mental health treatment but not competency restoration services. ***Id.*** at 7-10.

The Commonwealth also presented DHS lawyer Jeffrey Hoeflich, who confirmed Shires' testimony that Torrance will not accept a person serving a sentence of state incarceration, and that DHS will send personnel into state

correctional institutions to conduct periodic competency evaluations. *Id.* at 15-17.

Finally, the Commonwealth presented DOC psychologist Cynthia Wright, who described the forms of mental health treatment available within the DOC. Wright said Humphrey was in the Secured Residential Treatment Unit at SCI Greene, which is for inmates with serious mental illness or chronic disciplinary problems. *Id.* at 24. Humphrey refused to cooperate in Wright's June 27, 2019 psychological assessment of him, and then was transferred to a restricted housing unit at SCI Forest where he was seen by a psychologist at least once every 30 days and by a psychiatrist every 90 to 120 days. *Id.* at 25-26. Wright confirmed that the DOC would permit Humphrey to undergo a competency evaluation. *Id.* at 26.

In its written opposition to Humphrey's motion to dismiss, the Commonwealth attached Wright's June 27, 2019 report, in which Wright opined that Humphrey's behavior in prison was not the result of mental illness. Rather, Wright believed Humphrey engaged in goal-driven attempts to get special treatment.

In summary, the record establishes that Humphrey was incompetent as of his November 7, 2018 court-ordered assessment by Dr. Scotilla. He was never reevaluated after that date. Humphrey was able to (and did) receive mental health treatment, but not competency restoration services, while serving his sentence of state incarceration. Likewise, DHS could send

personnel into a state prison to conduct periodic competency evaluations on an inmate. The record is silent as to whether Humphrey's treatment improved his condition.

In his brief, Humphrey argues that the Commonwealth's failure, over the course two years, to procure the treatment Humphrey needed to regain his competency, combined with the other factors cited by the trial court, is a sufficient basis for affirming the trial court's orders. The Commonwealth counters that the complications arise from Appellant's state incarceration for a prior conviction, and that a mentally incompetent inmate should not be free to assault corrections officers with impunity. The Commonwealth also notes that the record contains evidence that Humphrey's behavior is goal driven and is not the result of mental illness.

In rendering its decision, the trial court found as follows: "Given the severity of [Humphrey's] incompetency, the court finds it highly unlikely that [Humphrey] will be able to recall the events for which he is charged, and certainly would be prejudiced in defending himself at trial due [sic] as a result." Trial Court Opinion, 2/9/20, at 4. In our view, the record fails to support the trial court's findings. Here, as in **Kerrigan**, Humphrey has offered no evidence to that effect.

First, with regard to the court's finding that Humphrey is unlikely to regain competence, we observe that the language of § 7403(e) does not contemplate dismissal of charges based on a finding that the defendant is

unlikely to regain competency in the future. **See Humphrey**, 283 A.3d at 296 (Brobson, J., concurring). In any event, the evidence of Humphrey's incompetency was fifteen months old as of the February 7, 2020 hearing. Nothing in the record establishes whether Humphrey's condition remained constant or declined after the initial competency evaluation. According to Dr. Wright's June 27, 2019 assessment (which was not an evaluation of his competency to stand trial), Humphrey's misbehavior was deliberate, goal-driven, and not the result of serious mental illness. Further, Dr. Wright testified that Humphrey was seen regularly by DOC psychiatrists and psychologists. But because the trial court did not order periodic reevaluations of Humphrey's competency, we cannot discern whether and to what extent the psychiatric and psychological treatment was successful.

Second, with regard to the trial court's findings that resumption of prosecution would be unjust due to the passage of time, there is no evidence that Humphrey's mental health issues will compromise his ability to recall events or assist in his defense if and when he regains competence. Dr. Scotilla's written evaluation does not address this issue. Nor is there any evidence of missing witnesses or other evidentiary problems that have arisen or will arise due to the passage of time. The trial court's findings on these points were purely speculative. Furthermore, we observe that § 7304(f) permits (but does not require) pending charges to remain for the duration of the applicable statutory maximum sentence, in this case seven years. Thus,

the mere passage of time is not, of itself, a sufficient basis for dismissal under § 7403(e). For the foregoing reasons, we conclude the evidence was not sufficient to support dismissal of the pending charges.

In the remaining issue on remand, the Commonwealth argues that the trial court erred in dismissing the charges without ordering a reevaluation of Humphrey's competency. We agree, given the plain and unambiguous statutory mandate:

> **(c) Defendant's Right to Counsel; Reexamination.**--A person who is determined to be incompetent to proceed shall have a continuing right to counsel so long as the criminal charges are pending. **Following such determination, the person charged shall be reexamined not less than every 90 days by a psychiatrist appointed by the court and a report of reexamination shall be submitted to the court and to counsel.**

50 P.S. § 7403(c) (emphasis added). In addition, we note the **Kerrigan** Court's observation (under a similarly worded predecessor to current § 7403(c)):

> In the future, subsection (c) will require psychiatric examinations and the submission of reports to the court every ninety days. This guarantees continuing consideration of appellant's progress, or the lack thereof, and will enable the court to take prompt action in the event of material change in the condition of appellant's mental health.

*Id.* at 732. As of this writing, Humphrey's most recent competency examination took place more than four years ago, on November 7, 2018. On remand, should the parties proceed further, the trial court must issue an order

in accordance with § 7403(c) so that Humphrey undergoes periodic competency evaluations for as long as his incompetency to stand trial remains.

Based on all of the foregoing, we vacate the trial court's orders and remand for further proceedings in accordance with this memorandum and with our Supreme Court's opinion in this matter. We reach our decision without prejudice to Humphrey's ability to file new motions to dismiss. We anticipate that the disposition of any such motion will require further development of the record including, at a minimum, an evaluation of Humphrey's present ability to undergo trial.

Orders vacated. Case remanded. Jurisdiction relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2023

- 14 -